FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

2007 FEB -6  AM 11: 50

CLERK, US DISTRICT COURT
MIDDLE DISTRICT FLORIDA
ORLANDO, FL

RED BULL NORTH AMERICA, INC. and
RED BULL GMBH LIMITED LIABILITY
COMPANY,

       Plaintiffs,

vs.

ORLANDO NIGHTCLUB ENTERPRISES, INC. and
TED A. PIZIO,

       Defendants.

Civil Action No.

6:07-cv-176-ORL-28 DAB

**COMPLAINT AND JURY
DEMAND**

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiffs Red Bull North America, Inc. ("Red Bull NA") and Red Bull GmbH

Limited Liability Company ("Red Bull GmbH") sue Defendants Orlando Nightclub

Enterprises, Inc. and Ted A. Pizio and allege as follows:

### INTRODUCTION

This is a civil action for unfair competition, trademark infringement, and unjust

enrichment arising under the Lanham Act, 15 U.S.C. §§ 1114, 1116, 1125(a) and Florida

common law, seeking preliminary and permanent injunctive relief, monetary damages

and related remedies.

### JURISDICTION AND VENUE

1.   This Court has subject matter jurisdiction over this action pursuant to 28

U.S.C. §§ 1331, 1332, 1338 and 1367 and 15 U.S.C. § 1121.

2.   Personal jurisdiction and venue are proper in this federal judicial district

pursuant to 28 U.S.C. § 1391(b) and (c) because Defendants are doing business within

BUCHANAN INGERSOLL PC :: Bank of America Tower :: 100 S.E. Second Street, 34th Floor :: Miami, FL 33131-2158 :: T 305 347 4080 :: F 305 347 4089

Dockets.Justia.com

this judicial district and the events giving rise to the claims alleged herein occurred, and upon information and belief, continue to occur within this judicial district.

**PARTIES**

3.  Plaintiff Red Bull GmbH is a limited liability company duly organized under the laws of Austria with its principal place of business at Am Brunnen 1, Fuschl am See, 5330 Austria.

4.  Plaintiff Red Bull NA is a corporation duly organized and existing under the laws of the State of California with its principal place of business in Santa Monica, California. Plaintiff Red Bull NA is a wholly owned subsidiary of Plaintiff Red Bull GmbH.

5.  Upon information and belief, Defendant Orlando Nightclub Enterprises, Inc. is a corporation organized and existing under the laws of the State of Florida with its principal place of business in the State of Florida. Upon information and belief, Defendant Orlando Nightclub Enterprises, Inc. owns and operates the Roxy Night Club (the "Roxy"), a bar located at 740 Bennett Road in Orlando, Florida.

6.  Upon information and belief, Defendant Ted A. Pizio is, and at all relevant times was, a citizen of Florida. Upon information and belief, Ted A. Pizio operates the Roxy and permitted others to engage in the unlawful activities described below as agents for him and for Defendant Orlando Nightclub Enterprises, Inc.

**ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF**

7.  Plaintiff Red Bull GmbH is a worldwide manufacturer and distributor of a non-alcoholic beverage known as RED BULL® (hereafter "RED BULL®" or "RED BULL® energy drink"). RED BULL® is a non-alcoholic, yellowish in color beverage that contains the amino acid taurine, glucuronolactone, B-complex vitamins, caffeine and carbohydrates. RED BULL® is marketed and sold primarily as an energy drink. RED

BUCHANAN INGERSOLL PC :: Bank of America Tower :: 100 S.E. Second Street, 34th Floor :: Miami, FL 33131-2158 :: T 305 347 4080 :: F 305 347 4089

BULL® is commonly found in restaurants and bars. Patrons of these establishments generally purchase, order and consume RED BULL® alone or together with alcoholic beverages. Until October 2006, RED BULL® was distributed solely in 8.3 ounce aluminum cans. Since October 2006, RED BULL® has been distributed solely in 8.3 ounce aluminum cans and 12.0 ounce slimline aluminum cans.

8.  Plaintiff Red Bull GmbH owns United States Trademark Registration No. 3,092,197 for the mark RED BULL® in connection with non-alcoholic energy drinks, among other things. A true and correct copy of the trademark registration is attached as Exhibit A.

9.  Plaintiff Red Bull GmbH's marks are well known, distinctive, famous and serve as identifiers of its energy drink to consumers, based upon Plaintiff Red Bull GmbH's many years of continuous, widespread use and extensive advertising and promotion under the marks. In addition to its extensive worldwide advertising and marketing, Plaintiff Red Bull GmbH, and its authorized U.S. distributors, have spent nearly $1,000,000,000.00 since 1996 advertising and promoting the RED BULL® mark and the RED BULL® energy drink in the United States alone. Plaintiff Red Bull GmbH sold approximately 1 billion cans of RED BULL® in 2005 in the United States.

10. In 1997, Plaintiff Red Bull GmbH granted Plaintiff Red Bull NA the exclusive right to distribute and sell the RED BULL® energy drink in the United States and permitted Red Bull NA to grant third parties the right to distribute RED BULL® within the United States. Currently, Red Bull NA has approximately 275 United States RED BULL® distributors.

BUCHANAN INGERSOLL PC :: Bank of America Tower :: 100 S.E. Second Street, 34th Floor :: Miami, FL 33131-2158 :: T 305 347 4080 :: F 305 347 4089

11. Plaintiffs Red Bull GmbH, Red Bull NA and the RED BULL® mark are in no way affiliated or in any way associated with the manufacturers of a beverage called "Rockstar."

## Passing Off at the Roxy

12. On April 9, 2005, Tracy Fydenkevez, a private investigator hired by Red Bull NA, entered the Roxy and ordered a "RED BULL® and Stoli" cocktail from a male bartender with a shaved head and diamond earrings, who appeared to be approximately 25 years old, 5'8," and 160 pounds. Ms. Fydenkevez observed this bartender make her cocktail with Rockstar instead of RED BULL®. Ms. Fydenkevez was never verbally informed of the substitution.

13. Later during her April 9, 2005 visit, Ms. Fydenkevez ordered a "RED BULL® and Stoli" cocktail from another Roxy bartender, a blonde male who appeared to be approximately 24 years old, 5'11," and 140 pounds. Ms. Fydenkevez observed this bartender make her cocktail with Rockstar instead of RED BULL®. Ms. Fydenkevez was never verbally informed of the substitution.

14. Later during her April 9, 2005 visit, Ms. Fydenkevez ordered a "RED BULL® and Stoli" cocktail from another Roxy bartender, a male with spiked reddish-brown hair and sideburns who appeared to be approximately 26 years old, 5'9," and 160 pounds. Ms. Fydenkevez observed this bartender make her cocktail with Rockstar instead of RED BULL®. Ms. Fydenkevez was never verbally informed of the substitution.

15. Later during her April 9, 2005 visit, Ms. Fydenkevez ordered a "RED BULL® and Stoli" cocktail from another Roxy bartender who appeared to be approximately 25

-4-

years old, 5'9", and 140 pounds. Ms. Fydenkevez observed this bartender make her cocktail with Rockstar instead of RED BULL®. Ms. Fydenkevez was never verbally informed of the substitution.

16. Later during her April 9, 2005 visit, Ms. Fydenkevez ordered a "RED BULL® and Stoli" cocktail from another Roxy bartender, a female with a tattoo of a butterfly on her back and long dark hair past her shoulders, who appeared to be approximately 23 years old, 5'8", and 100 pounds. Ms. Fydenkevez observed this bartender make her cocktail with Rockstar instead of RED BULL®. Ms. Fydenkevez was never verbally informed of the substitution.

17. Later during her April 9, 2005 visit, Ms. Fydenkevez ordered a "RED BULL® and Stoli" cocktail from another Roxy bartender, a blonde female who appeared to be approximately 25 years old, 5'6", and 120 pounds. Ms. Fydenkevez observed this bartender make her cocktail with Rockstar instead of RED BULL®. Ms. Fydenkevez was never verbally informed of the substitution.

### First Written Warning

18. On April 13, 2005, Dana Moody, an On-Premise Manager of Red Bull NA, sent a letter to Ted Pizio at the Roxy. This letter reminded Mr. Pizio of the Roxy employees' obligation to inform RED BULL® consumers when the Roxy serves an alternative product. The letter explained the harm that RED BULL® experiences when a consumer has a negative reaction to an alternative product that the consumer wrongly believes to be RED BULL®. The letter informed Mr. Pizio that Red Bull NA had documentation showing people were served Rockstar when they ordered RED BULL® at

BUCHANAN INGERSOLL PC :: Bank of America Tower :: 100 S.E. Second Street, 34th Floor :: Miami, FL 33131-2158 :: T 305 347 4080 :: F 305 347 4089

the Roxy. The letter warned Mr. Pizio that Red Bull NA would continue monitoring the situation.

## Passing Off Continues at the Roxy

19. On April 13, 2005, David Fishlock entered the Roxy and ordered two "RED BULL® and Bacardi O" cocktails from a bartender who identified himself as Darren. This male bartender wore a lip ring and appeared to be approximately 6'0" and between the ages of 26 and 32. Mr. Fishlock observed this bartender make his cocktail using a can of Rockstar instead of RED BULL®. After the bartender served the drink and accepted payment, Mr. Fishlock confronted the bartender asking if the drink contained RED BULL®. The bartender admitted, "No, it is Rockstar."

20. On May 7, 2005, private investigator Tracy Fydenkevez returned to the Roxy and ordered a "RED BULL® and Stoli" cocktail from a male Roxy bartender with a goatee, who appeared to be approximately 36 years old, 6'0", and 180 pounds. Ms. Fydenkevez observed this bartender prepare her cocktail with Rockstar instead of RED BULL®. The bartender never verbally informed Ms. Fydenkevez of the substitution.

21. Later during her May 7, 2005 visit, Ms. Fydenkevez ordered a "RED BULL® and Stoli" cocktail from another Roxy bartender, a blonde male who appeared to be approximately 26 years old, 5'10", and 210 pounds. Ms. Fydenkevez observed this bartender make her cocktail with Rockstar instead of RED BULL®. Ms. Fydenkevez was never verbally informed of the substitution.

22. Later during her May 7, 2005 visit, Ms. Fydenkevez ordered a "RED BULL® and Stoli" cocktail from another Roxy bartender, a male with short brown hair who

BUCHANAN INGERSOLL PC :: Bank of America Tower :: 100 S.E. Second Street, 34th Floor :: Miami, FL 33131-2158 :: T 305 347 4080 :: F 305 347 4089

appeared to be approximately 24 years old, 5'11" and 165 pounds. Ms. Fydenkevez observed this bartender make her cocktail with Rockstar instead of RED BULL®. Ms. Fydenkevez was never verbally informed of the substitution.

23. Later during her May 7, 2005 visit, Ms. Fydenkevez ordered a "RED BULL® and Stoli" cocktail from another Roxy bartender, a male with short brown hair and hoop earrings in both ears who appeared to be approximately 24 years old, 5'10", and 160 pounds. Ms. Fydenkevez observed this bartender make her cocktail with Rockstar instead of RED BULL®. Ms. Fydenkevez was never verbally informed of the substitution.

24. Later during her May 7, 2005 visit, Ms. Fydenkevez ordered a "RED BULL® and Stoli" cocktail from another Roxy bartender, a male with a shaved head, thin sideburns, and a goatee, who appeared to be approximately 29 years old, 6'0", and 190 pounds. Ms. Fydenkevez observed this bartender make her cocktail with Rockstar instead of RED BULL®. Ms. Fydenkevez was never verbally informed of the substitution.

## Second Written Warning

25. On July 21, 2005, Robert Sorensen, legal counsel for Red Bull NA, sent a letter to Ted Pizio at the Roxy informing him that Red Bull NA had evidence of numerous instances of passing off by Roxy employees. In this letter, Mr. Sorensen reminded Mr. Pizio that the practice of falsely designating the origin of goods, or passing-off, is illegal under both federal and state law and carries severe legal consequences. Mr. Sorensen requested that Roxy employees be instructed that passing-

BUCHANAN INGERSOLL PC :: Bank of America Tower :: 100 S.E. Second Street, 34th Floor :: Miami, FL 33131 2158 :: T 305 347 4080 :: F 305 347 4089

off is a very serious offense. Mr. Sorensen reminded Mr. Pizio that when customers order a RED BULL®, Roxy employees must inform the customers that the Roxy does not sell RED BULL® and the customers must approve the substitution before the employees serve the customers something else. Mr. Sorensen reminded Mr. Pizio that Red Bull NA had previously sent him a written warning on April 13, 2005. Mr. Sorensen warned Mr. Pizio that if the situation was not corrected, Red Bull NA would have to take legal action.

### Passing off Continues at the Roxy Despite Two Warnings

26. On August 12, 2005, private investigator Tracy Fydenkevez viewed the website for the Roxy (www.roxyorlando.com) and observed that one of the links was the RED BULL® icon, which connected to the RED BULL® website: www.redbull.com.

27. On August 13, 2005, Ms. Fydenkevez returned to the Roxy and ordered a "RED BULL® and Stoli" cocktail from a Roxy bartender, a blonde female who appeared to be approximately 24 years old, 6'0", and 125 pounds. Ms. Fydenkevez observed this bartender prepare her cocktail with Rockstar instead of RED BULL®. Ms. Fydenkevez was never verbally informed of the substitution.

28. Later during her August 13, 2005 visit, Ms. Fydenkevez ordered a "RED BULL® and Stoli" cocktail from another Roxy bartender, a blonde female who appeared to be approximately 25 years old, 5'11", and 120 pounds . Ms. Fydenkevez observed this bartender make her cocktail with Rockstar instead of RED BULL®. Ms. Fydenkevez was never verbally informed of the substitution.

29. On September 10, 2005, Steven Allen, another private investigator hired by Red Bull NA, entered the Roxy and ordered a "RED BULL® and Stoli" cocktail from a

BUCHANAN INGERSOLL PC :: Bank of America Tower :: 100 S.E. Second Street, 34th Floor :: Miami, FL 33131-2158 :: T 305 347 4080 :: F 305 347 4089

Roxy bartender, a blonde female who appeared to be approximately twenty-four years old, 6'0", and 125 pounds. Mr. Allen observed this bartender make his cocktail with Rockstar instead of RED BULL®. Mr. Allen was never verbally informed of the substitution.

30. Later during his September 10, 2005 visit, Mr. Allen ordered a "RED BULL® and Stoli" cocktail from another Roxy bartender, a male bartender with a goatee, who appeared to be approximately 23 years old, 6'0", 190 pounds. Mr. Allen observed this bartender make his cocktail with Rockstar instead of RED BULL®. Mr. Allen was never verbally informed of the substitution.

31. Later during his September 10, 2005 visit, Mr. Allen ordered a "RED BULL® and Stoli" cocktail from another Roxy bartender, a male with dark brown hair with sideburns who appeared to be approximately 20 years old, 5'10", and 165 pounds . Mr. Allen observed this bartender make his cocktail with Rockstar instead of RED BULL®. Mr. Allen was never verbally informed of the substitution.

32. Later during his September 10, 2005 visit, Mr. Allen ordered a "RED BULL® and Stoli" cocktail from another Roxy bartender, a male with spiked brown hair who appeared to be approximately 20 years old,  5'8", and 155 pounds. Mr. Allen observed this bartender make his cocktail with Rockstar instead of RED BULL®. Mr. Allen was never verbally informed of the substitution.

33. On May 5, 2006, private investigator Tracy Fydenkevez again viewed the website for the Roxy (www.roxyorlando.com) and observed that the website continued to display the RED BULL® icon and link to the RED BULL® website (www.redbull.com).

BUCHANAN INGERSOLL PC :: Bank of America Tower :: 100 S.E. Second Street, 34th Floor :: Miami, FL 33131-2158 :: T 305 347 4080 :: F 305 347 4089

34. On May 13, 2006, Ms. Fydenkevez returned to the Roxy and ordered a "RED BULL® and Stoli" cocktail from a Roxy bartender, a female with brown hair almost to her waist who appeared to be approximately 24 years old, 5'8" 100 pounds. Ms. Fydenkevez observed this bartender prepare her cocktail with Rockstar instead of RED BULL®. Ms. Fydenkevez was never verbally informed of the substitution.

35. Later during her May 13, 2006 visit, Ms. Fydenkevez ordered a "RED BULL® and Stoli" cocktail from another Roxy bartender, a female with shoulder length brown hair who appeared to be approximately 22 years old, 5'3", and 100 pounds. Ms. Fydenkevez observed this bartender prepare her cocktail with Rockstar instead of RED BULL®. Ms. Fydenkevez was never verbally informed of the substitution.

36. Later during her May 13, 2006 visit, Ms. Fydenkevez ordered a "RED BULL® and Stoli" cocktail from another Roxy bartender, a brunette female who appeared to be approximately 26 years old, 5'5" 130 pounds. Ms. Fydenkevez observed this bartender prepare her cocktail with Rockstar instead of RED BULL®. Ms. Fydenkevez was never verbally informed of the substitution.

37. Later during her May 13, 2006 visit, Ms. Fydenkevez ordered a "RED BULL® and Stoli" cocktail from another Roxy bartender, a male with short spiked brown hair who wore a thick silver necklace and silver earrings in both ears, and who appeared to be approximately 24 years old, 5'9", and 170 pounds. Ms. Fydenkevez observed this bartender prepare her cocktail with Rockstar instead of RED BULL®. Ms. Fydenkevez was never verbally informed of the substitution.

38. Later during her May 13, 2006 visit, Ms. Fydenkevez ordered a "RED BULL®

BUCHANAN INGERSOLL PC :: Bank of America Tower :: 100 S.E. Second Street, 34th Floor :: Miami, FL 33131-2158 :: T 305 347 4080 :: F 305 347 4089

and Stoli" cocktail from another Roxy bartender, a male who appeared to be approximately 25 years old and 5'10". Ms. Fydenkevez observed this bartender prepare her cocktail with Rockstar instead of RED BULL®. Ms. Fydenkevez was never verbally informed of the substitution.

39. On July 7, 2006, Jared Shear, a private investigator hired by Red Bull NA, viewed the website for the Roxy (www.roxyorlando.com) and observed that the RED BULL® icon which links to the RED BULL® website: www.redbull.com was still operational on the Roxy's website.

40. On July 7, 2006, Mr. Shear entered the Roxy and ordered a "RED BULL® and Stoli" cocktail from a Roxy bartender, a blonde male with a goatee who appeared to be approximately 23 years old, 5'9", and 150 pounds. Mr. Shear observed this bartender prepare his cocktail with Rockstar instead of RED BULL®. Mr. Shear was never verbally informed of the substitution.

41. Later during his July 7, 2006 visit, Mr. Shear ordered a "RED BULL® and Stoli" cocktail from another Roxy bartender, a black-haired male who appeared to be approximately 24 years old, 5'9", and 130 pounds. Mr. Shear observed this bartender prepare his cocktail with Rockstar instead of RED BULL®. Mr. Shear was never verbally informed of the substitution.

42. Later during his July 7, 2006 visit, Mr. Shear ordered a "RED BULL® and Stoli" cocktail from another Roxy bartender, a brunette female who appeared to be approximately 22 years old, 5'5", and 130 pounds. Mr. Shear observed this bartender prepare his cocktail with Rockstar instead of RED BULL®. Mr. Shear was never verbally

BUCHANAN INGERSOLL PC :: Bank of America Tower :: 100 S.E. Second Street, 34th Floor :: Miami, FL 33131-2158 :: T 305 347 4080 :: F 305 347 4089

informed of the substitution.

43. Later during his July 7, 2006 visit, Mr. Shear ordered a "RED BULL® and Stoli" cocktail from another Roxy bartender, a dark haired male who appeared to be approximately 25 years old, 5'10", and 180 pounds. Mr. Shear observed this bartender prepare his cocktail with Rockstar instead of RED BULL®. Mr. Shear was never verbally informed of the substitution.

44. Later during his July 7, 2006 visit, Mr. Shear ordered a "RED BULL® and Stoli" cocktail from another Roxy bartender, a female with shoulder length brown hair and gold streaks who appeared to be approximately 24 years old, 5'6", 110 pounds. Mr. Shear observed this bartender prepare his cocktail with Rockstar instead of RED BULL®. Mr. Shear was never verbally informed of the substitution.

45. On November 11, 2006, Mr. Shear viewed the website for the Roxy (www.roxyorlando.com) and observed that the website continued to contain an operational link to the RED BULL® website (www.redbull.com). The link was in the form of a RED BULL® icon.

46. On November 11, 2006, Mr. Shear returned to the Roxy and ordered a "RED BULL® and Stoli" cocktail from a Roxy bartender, a male with brown spiked hair who appeared to be approximately 22 years old, 5'9", and 145 pounds. Mr. Shear observed this bartender prepare his cocktail with a can labeled Rockstar instead of RED BULL®. Mr. Shear was never verbally informed of the substitution of Rockstar for RED BULL®.

47. Later during his November 11, 2006 visit, Mr. Shear ordered another "RED BULL® and Stoli" cocktail from another Roxy bartender, a female with dirty-blonde hair

BUCHANAN INGERSOLL PC :: Bank of America Tower :: 100 S.E. Second Street, 34th Floor :: Miami, FL 33131-2158 :: T 305 347 4080 :: F 305 347 4089

who appeared to be approximately 27 years old, 5'11", and 130 pounds. Mr. Shear observed this bartender prepare his cocktail with a can labeled Rockstar instead of RED BULL®. Mr. Shear was never verbally informed of the substitution of Rockstar for RED BULL®.

48. Later during his November 11, 2006 visit, Mr. Shear ordered another "RED BULL® and Stoli" cocktail from another Roxy bartender, a female with blonde shoulder length hair who appeared to be approximately 21 years old, 5'5", and 120 pounds. Mr. Shear observed this bartender prepare his cocktail with a can labeled Rockstar instead of RED BULL®. Mr. Shear was never verbally informed of the substitution of Rockstar for RED BULL®.

49. Later during his November 11, 2006 visit, Mr. Shear ordered another "RED BULL® and Stoli" cocktail from another Roxy bartender, a male who appeared to be approximately 27 years old, 6'0", and 205 pounds. Mr. Shear observed this bartender prepare his cocktail with a can labeled Rockstar instead of RED BULL®. Mr. Shear was never verbally informed of the substitution of Rockstar for RED BULL®.

50. Later during his November 11, 2006 visit, Mr. Shear ordered another "RED BULL® and Stoli" cocktail from another Roxy bartender, a male with short brown spiked hair and silver earrings who appeared to be approximately 25 years old, 5'11", and 170 pounds. Mr. Shear observed this bartender prepare his cocktail with a can labeled Rockstar instead of RED BULL®. Mr. Shear was never verbally informed of the substitution of Rockstar for RED BULL®.

BUCHANAN INGERSOLL PC :: Bank of America Tower :: 100 S.E. Second Street, 34th Floor :: Miami, FL 33131-2158 :: T 305 347 4080 :: F 305 347 4089

## COUNT I
## Unfair Competition in Violation of Section 43(a)
## of the Lanham Act, 15 U.S.C. §1125(a)

51. Plaintiffs reallege and incorporate by reference the allegations contained in Paragraphs 1 through 50 of the Complaint.

52. Defendants have deliberately misled the public and the trade into believing that beverages sold by Defendants are sponsored, authorized or approved by, or in some other way associated with, Plaintiffs Red Bull NA and Red Bull GmbH, through their substitution, without comment, of another beverage for RED BULL® when RED BULL® is specifically ordered by the customer.

53. Defendants' imitating and infringing use of the RED BULL® mark by passing off non-RED BULL® beverages as RED BULL® constitutes unfair competition, false designation of origin and false representations, in violation of the Lanham Act, 15 U.S.C. § 1125(a).

54. Defendants' sale of non-RED BULL® beverages as RED BULL® has created and continues to create a likelihood of confusion, mistake or deception as to the affiliation, connection, association, origin, sponsorship, nature, characteristics and qualities of the drinks served by Defendants relative to the RED BULL® energy drink. Furthermore, Defendants' characterization of the substitute drink as being the same as RED BULL® is a misrepresentation of the nature, characteristics and qualities of the RED BULL® energy drink.

55. By reason of Defendants' unlawful actions, Plaintiffs have suffered and continue to suffer irreparable harm including, but not limited to, detriment and diminution in value of the RED BULL® mark, for which there is no adequate remedy at law. Accordingly, Plaintiffs are entitled to an injunction against Defendant, pursuant to 15 U.S.C. § 1116.

-14-

56. Plaintiffs have also suffered and continue to suffer injury and are entitled to recover all damages sustained as a result of Defendants' actions, all profits realized by Defendants and costs of suit pursuant to 15 U.S.C. § 1117.

57. Defendants knew of Plaintiffs' long-standing and widely recognized RED BULL® mark and deliberately used the mark. Further, on multiple occasions, Red Bull NA asked Defendants to cease passing off non-RED BULL® beverages as RED BULL®, but Defendants deliberately ignored these requests and continued their unlawful behavior. Because Defendants' actions are and were willful, deliberate and fraudulent, Plaintiffs are entitled to treble damages and an award of reasonable attorneys' fees against Defendants, pursuant to 15 U.S.C. § 1117.

**COUNT II**
**Trademark Infringement in Violation of Section 32(1)**
**of the Lanham Act, 15 U.S.C. § 1114(1)**

58. Plaintiffs reallege and incorporate by reference the allegations contained in Paragraphs 1 through 50 of the Complaint.

59. Defendants' use of the RED BULL® mark, by deliberately substituting, without comment, another beverage for the RED BULL® energy drink even though RED BULL® is specifically ordered, constitutes trademark infringement of Plaintiff Red Bull GmbH's U.S. Trademark Registration Number 3,092,197, in violation of the Lanham Act, 15 U.S.C. § 1114(1).

60. Defendants' unauthorized use of the RED BULL® mark in connection with non-RED BULL® beverages has created and continues to create a likelihood of confusion, mistake or deception as to the affiliation, connection, association, origin, sponsorship, approval, commercial activities, nature, characteristics and qualities of the beverages Defendants serve relative to Plaintiffs' RED BULL® energy drink.

61. By reason of Defendants' unlawful actions, Plaintiffs have suffered and

BUCHANAN INGERSOLL PC :: Bank of America Tower :: 100 S.E. Second Street, 34th Floor :: Miami, FL 33131-2158 :: T 305 347 4080 :: F 305 347 4089

continue to suffer irreparable harm including, but not limited to, detriment and diminution in value of the RED BULL® mark, for which there is no adequate remedy at law. Accordingly, Plaintiffs are entitled to an injunction against Defendants, pursuant to 15 U.S.C. § 1116.

62. Plaintiffs have suffered and continue to suffer injury and are entitled to recover all damages sustained as a result of Defendants' actions, all profits realized by Defendants and costs of suit, pursuant to 15 U.S.C. § 1117.

63. Defendants knew of Plaintiffs' long-standing and widely recognized RED BULL® mark and deliberately used this mark. Moreover, Defendants purposefully chose to substitute non-RED BULL® beverages for RED BULL® and failed to notify customers of this substitution even though these customers specifically asked for RED BULL®. Despite Plaintiffs' multiple demands to cease the infringing activity, Defendants, in pursuit of their unlawful activities and to confuse the trade and public, have intentionally and unlawfully continued to pass off non-RED BULL® beverages as RED BULL®. Defendants' actions are and were willful, deliberate and fraudulent, and thus Plaintiffs are entitled to treble damages and an award of reasonable attorneys' fees against Defendant, pursuant to 15 U.S.C. § 1117.

## COUNT III
### Unjust Enrichment in Violation of
### Florida Common Law

64. Plaintiffs reallege and incorporate by reference the allegations contained in Paragraphs 1 through 50 of the Complaint.

65. Defendants have received and continue to receive substantial profits and other benefits from their passing off and sales of non-RED BULL® beverages as RED BULL®. Those profits and benefits rightfully belong to, and should have been received by, Plaintiffs.

-16-

66. By reason of Defendants' infringing actions, they have been unjustly enriched at Plaintiffs' expense in an amount to be proved at trial.

67. Defendants owe Plaintiffs all profits and benefits that have been received by Defendants from the passing off and sale of non-RED BULL® beverages as RED BULL®.

68. The circumstances are such that it would be inequitable for Defendants to retain the profits and benefits from the use of the RED BULL® mark without paying the value for same to Plaintiffs.

**COUNT IV**
**Unfair Competition Under**
**Florida Common Law**

69. Plaintiffs reallege and incorporate by reference the allegations contained in Paragraphs 1 through 50 of the Complaint.

70. Defendants' use of the RED BULL® mark, by substituting another beverage for the RED BULL® energy drink, without notifying the customers of this substitution despite their specific request for RED BULL®, deceives the public and constitutes an act of unfair competition under Florida common law.

71. By reason of Defendants' unlawful actions, Plaintiffs have suffered and continue to suffer irreparable harm including, but not limited to, detriment and diminution in value of the RED BULL® mark, for which there is no adequate remedy at law. Accordingly, Plaintiffs are entitled to an injunction against Defendants.

72. Plaintiffs have also suffered and continue to suffer injury and are entitled to recover all damages sustained as a result of Defendants' unlawful actions.

**PRAYER FOR RELIEF**

WHEREAS, Plaintiffs pray for relief against Defendants as follows:

BUCHANAN INGERSOLL PC :: Bank of America Tower :: 100 S.E. Second Street, 34th Floor :: Miami, FL 33131-2158 :: T 305 347 4080 :: F 305 347 4089

(a)     On Counts I, II, and IV, for a Preliminary Injunction Order that:

(i)     preliminarily enjoins and restrains Defendants, their agents, employees, attorneys, successors, licensees and assigns, and all others in active concert or participation with any of them from selling or offering to sell, in response to orders for RED BULL®, a beverage of another manufacturer, without first giving the customer verbal notice that a beverage other than RED BULL® is being sold and the opportunity to accept or reject the substitute product prior to fulfilling the customer's order; from directly or indirectly marketing, advertising or using in any way the RED BULL® mark or any colorable imitation thereof in connection with a non-RED BULL® beverage; from displaying the RED BULL® mark on websites for the Roxy; from doing any other acts likely to infringe Plaintiff Red Bull GmbH's RED BULL® mark; or from committing any other acts of unfair competition against Plaintiffs;

(ii)     orders Defendants to instruct their employees not to sell or offer to sell, in response to orders for RED BULL®, a beverage of another manufacturer, without first giving the customer verbal notice that a beverage other than RED BULL® is being sold and the opportunity to accept or reject the substitute product prior to fulfilling the customer's order;

(iii)     directs Defendants to show such Order to all employees working at the Roxy.

(iv)     directs Defendants to file with this Court and serve upon Plaintiffs within fourteen (14) days after entry of such Order, a report in writing, under oath, setting forth in detail the manner of Defendants' compliance

(b)     On Counts I, II, and IV, for a Permanent Injunction Order that:

(i)     permanently enjoins and restrains Defendants, their agents, employees, attorneys, successors, licensees and assigns, and all others in active concert or

BUCHANAN INGERSOLL PC :: Bank of America Tower :: 100 S.E. Second Street, 34th Floor :: Miami, FL 33131-2158 :: T 305 347 4080 :: F 305 347 4089

participation with any of them from selling or offering to sell, in response to orders for RED BULL®, a beverage of another manufacturer, without first giving the customer verbal notice that a beverage other than RED BULL® is being sold and the opportunity to accept or reject the substitute product prior to fulfilling the customer's order; from directly or indirectly marketing, advertising or using in any way the RED BULL® mark or any colorable imitation thereof in connection with a non-RED BULL® beverage; from displaying the RED BULL® mark on websites for the Roxy; from doing any other acts likely to infringe Plaintiff Red Bull GmbH's RED BULL® mark; or from committing any other acts of unfair competition against Plaintiffs;

(ii)     orders Defendants to instruct their employees not to sell or offer to sell, in response to orders for RED BULL®, a beverage of another manufacturer, without first giving the customer verbal notice that a beverage other than RED BULL® is being sold and the opportunity to accept or reject the substitute product prior to fulfilling the customer's order;

(iii)     directs Defendants to show such Order to all employees working at the Roxy.

(iv)     directs Defendants to file with this Court and serve upon Plaintiffs within fourteen (14) days after entry of such Order, a report in writing, under oath, setting forth in detail the manner of Defendants' compliance;

(c)     On Counts I-II, for monetary damages sustained by Plaintiffs as a result of Defendants' unlawful conduct and all profits realized or lost, in an amount to be proved at trial, and to be trebled or enhanced because of Defendants' willful and deliberate activities described herein;

(d)     On Count III for restitution in an amount according to proof;

(e)     On Count IV for monetary damages sustained by Plaintiffs as a result of

BUCHANAN INGERSOLL PC :: Bank of America Tower :: 100 S.E. Second Street, 34th Floor :: Miami, FL 33131-2158 :: T 305 347 4080 :: F 305 347 4089

Defendants' unlawful conduct and all profits realized or lost, in an amount to be proved at trial, together with punitive and exemplary damages because of Defendants' willful and deliberate activities described herein;

      (f)      On Counts I-IV for costs of suit;

      (h)      On Counts I-II for reasonable attorneys' fees; and

      (i)      For any other relief as is just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury as to all issues so triable.

Respectfully submitted,

Date: February 5th, 2007

Mary Leslie Smith
Fla. Bar. No. 774243
Trial Counsel
BUCHANAN INGERSOLL & ROONEY, PC
Bank of America Tower
100 S.E. Second Street, 34th Floor
Miami, Florida 33131
Telephone: (305) 347-4083
Facsimile: (305) 347-4089
leslie.smith@bipc.com

Of Counsel:

Michael E. Pappas
California State Bar No. 130400
SONNENSCHEIN NATH & ROSENTHAL LLP
601 South Figueroa Street, Suite 1500
Los Angeles, California 90017
Telephone: (213) 892-5010
Facsimile: (213) 623-9924
mpappas@sonnenschein.com

Karen C. Marchiano
California State Bar No. 233493

BUCHANAN INGERSOLL PC :: Bank of America Tower :: 100 S.E. Second Street, 34th Floor :: Miami, FL 33131-2158 :: T 305 347 4080 :: F 305 347 4089

Not Admitted in Massachusetts
SONNENSCHEIN NATH & ROSENTHAL LLP
One International Place, 3rd Floor
Boston, MA 02110
Telephone: (617) 235-6807
Facsimile: (617) 269-6899
kmarchiano@sonnenschein.com

ATTORNEYS FOR PLAINTIFFS
RED BULL NORTH AMERICA, INC.
AND RED BULL GMBH LIMITED
LIABILITY COMPANY

BUCHANAN INGERSOLL PC :: Bank of America Tower :: 100 S.E. Second Street, 34th Floor :: Miami, FL 33131 2158 :: T 305 347 4080 :: F 305 347 4089